1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   | JAMAAR SEGAR,                                    | CASE NO. C21-1526JLR

11   |                          Plaintiff,             | ORDER

12   |              v.

13   | ALLSTATE FIRE AND
     | CASUALTY INSURANCE
14   | COMPANY,

15   |                          Defendant.

16

## I.   INTRODUCTION

17      Before the court are:  (1) Plaintiff Jamaar Segar's motion to remand (Remand Mot.

18   (Dkt. # 10)); and (2) Defendant Allstate Fire and Casualty Insurance Company's

19   ("Allstate") partial motion to dismiss (MTD (Dkt. # 6); MTD Reply (Dkt. # 12)[1]).

20

21      [1] Mr. Segar did not file a response to Allstate's partial motion to dismiss.  (*See generally*
     Dkt.)  The court considers his failure to respond as an admission that the motion has merit.
22   Local Rules W.D. Wash. LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion,
     such failure may be considered by the court as an admission that the motion has merit."); *see*

1    Allstate opposes Mr. Segar's motion to remand.  (Remand Resp. (Dkt. # 13).[2])  The court

2    has considered the motions, all submissions filed in support of and in opposition to the

3    motions, the relevant portions of the record, and the applicable law.  Being fully advised,[3]

4    the court DENIES Mr. Segar's motion to remand and GRANTS Allstate's partial motion

5    to dismiss.

6                        **II.    BACKGROUND**

7          On September 21, 2015, an underinsured motorist struck Mr. Segar's vehicle,

8    injuring Mr. Segar and rendering his vehicle a total loss.  (Compl. (Dkt. # 1-1)

9    ¶¶ 3.1-3.4.)  Although the motorist's liability carrier paid Mr. Segar the motorist's policy

10   limits, he alleges that the motorist's $25,000 policy limit was insufficient to fully

11   compensate him for his alleged injuries and damages.  (*See id.* ¶ 12.2.)  Mr. Segar then

12   filed a claim with Allstate seeking to recover underinsured motorist ("UIM") benefits

13   under his automobile insurance policy (the "Policy") with Allstate.  (*See id.* ¶¶ 1.2, 1.4,

14   3.2, 3.8-3.9.)  Mr. Segar's Policy provides for $100,000 in underinsured motorist

15   ("UIM") coverage.  (*See id.* ¶¶ 1.2, 1.4.)  Allstate, however, allegedly "disput[ed] the

16   _____

17   *also Perrie v. OneWest Bank, FSB*, No. C11-6063BHS, 2012 WL 760911, at *1 (W.D. Wash. Mar. 7, 2012) (same).

18   [2] Mr. Segar did not file a reply to Allstate's response to his motion to remand.  (*See*

19   *generally* Dkt.)  The court considers his failure to respond as an admission that the arguments raised in Allstate's response have merit and an acknowledgment of the flaws in his motion to remand.  Local Rules W.D. Wash. LCR 7(b)(2); *see also Peoples Bank v. P/C Ambassador of the*

20   *Lake*, No. C16-1403JLR, 2017 WL 368341, at *1 (W.D. Wash. Jan. 25, 2017) ("The court treats this failure to reply as an acknowledgement of the flaws in Mr. Ragusa's motion.").

21   [3] Neither party has requested oral argument (*see* MTD at 1; Remand Mot. at 1; Remand

22   Resp. at 1), and the court finds that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

amount of damages [Mr. Segar] is entitled to and refus[ed] to make a reasonable UIM offer." (*See id.* ¶ 3.8.)

Mr. Segar commenced this action against Allstate in King County Superior Court on October 14, 2021. (*See generally id.*) He claims that Allstate breached the terms of the Policy by failing to pay him UIM benefits for the injuries that he sustained in the accident. (*See id.* ¶¶ 3.2, 3.8, 9.1-9.4.) In addition to his breach of contract claim, Mr. Segar also alleges that Allstate was negligent; that it breached its duty of good faith (*i.e.*, common law insurance bad faith) and its fiduciary duty; and that it violated the Washington Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015, and the Washington Consumer Protection Act ("CPA"), ch. 19.86 RCW. (*See id.* ¶¶ 5.1-10.1.) He seeks insurance benefits under the Policy, as well as extra-contractual tort damages, treble damages, attorneys' fees, costs, estoppel, and declaratory/injunctive relief.[4] (*See id.* ¶¶ 4.1, 5.2, 6.2, 7.3, 8.6, 9.4, 10.1, 11.1, 12.3, 13.1-13.6, 14.1-14.9.)

Allstate timely removed Mr. Segar's complaint to this court based on diversity subject matter jurisdiction. (*See generally* Not. of Removal (Dkt. # 1).) In its notice of removal, Allstate established that complete diversity exists between Mr. Segar, a citizen of Washington, and Allstate, a citizen of Delaware and Illinois. (*See id.* at 2-3; Compl. ¶ 1.1.) It also stated that the amount in controversy more likely than not exceeds the jurisdictional threshold of $75,000 based on Mr. Segar's allegations that he is entitled to the full $100,00 UIM policy limit, and his requests for treble damages and attorneys' fees

---

[4] Mr. Segar lists his requests for estoppel and declaratory/injunctive relief as independent causes of action. (*See* Compl. ¶¶ 11.1, 12.1-12.3.)

1   under the CPA and IFCA, extra-contractual tort damages, and declaratory and injunctive

2   relief.  (*See* Not. of Removal at 3-5.)

3       Allstate moved to dismiss all of Mr. Segar's claims except for his breach of

4   contract claim on November 23, 2021 (*see* MTD at 1-2), and Mr. Segar filed a motion to

5   remand this action back to state court on December 13, 2021 (*see* Remand Mot. at 1-2).

6                               **III.    ANALYSIS**

7       The court begins by discussing Mr. Segar's motion to remand before turning to its

8   analysis of Allstate's partial motion to dismiss.

9   **A.    Mr. Segar's Motion to Remand**

10      Mr. Segar moves to remand this action back to King County Superior Court,

11  arguing that Allstate failed to meet its burden to establish that the amount in controversy

12  exceeds the $75,000 jurisdictional threshold.  (*See* Remand Mot. at 1-2.)  The court sets

13  forth the relevant legal standard for motions to remand before turning to its analysis of

14  Mr. Segar's motion.

15      1.  <u>Legal Standard for Motions to Remand</u>

16      Removal of a civil action to federal district court is proper where the federal court

17  would have original jurisdiction over the state court action.  *See* 28 U.S.C. § 1441(a).

18  District courts have original jurisdiction over an action with both complete diversity of

19  citizenship among the parties and an amount in controversy exceeding $75,000.  *See* 28

20  U.S.C. § 1332(a); *see also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir.

21  2006).  Federal courts strictly construe the removal statute and must reject jurisdiction if

22  there is any doubt as to the right of removal in the first instance.  *See Hawaii ex rel. Louie*

1    *v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980

2    F.2d 564, 566 (9th Cir. 1992).  Moreover, when a suit is initiated in state court, there is a

3    strong presumption that the plaintiff has not claimed a sufficient amount to confer

4    jurisdiction to a federal court.  *Gaus*, 980 F.2d at 566.  Thus, the defendant has the burden

5    of establishing that removal is proper.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980

6    (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006).

7           Mr. Segar does not dispute that there is complete diversity of citizenship between

8    the parties.  (*See generally* Remand Mot.)  Thus, the only issue is whether the amount in

9    controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).

10          When the plaintiff's requested damages are unclear from the face of the complaint,

11   the defendant bears the burden of proving, by a preponderance of evidence, that the

12   amount in controversy exceeds $75,000.  *See Singer v. State Farm Mut. Auto. Ins. Co.*,

13   116 F.3d 373, 376 (9th Cir. 1997); *Gaus*, 980 F.2d at 566-67; 28 U.S.C. § 1446(c)(2)(B);

14   *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007)

15   (affirming the defendant's preponderance of evidence burden when the complaint was

16   unclear and did not specify a total amount in controversy).  Under this burden, the

17   defendant must provide evidence establishing that it is "more likely than not" that the

18   amount in controversy exceeds the required amount.  *See Sanchez v. Monumental Life*

19   *Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Abrego*, 443 F.3d at 683.  Beyond the

20   allegations in the pleadings, the defendant may present and the court may consider any

21   additional "summary-judgment-type evidence relevant to the amount in controversy at

22   the time of removal."  *See Kroske*, 432 F.3d at 980; *Korn v. Polo Ralph Lauren Corp.*,

536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice."). In weighing the evidence, the court considers "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

"The amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if [they] prevail[]." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-18 (9th Cir. 2018) (stating that the "amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious"); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (stating that the amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"). In calculating the amount in controversy, the court "looks not only to the amount of damages in dispute, but also to attorney's fees, costs, and statutory treble damages." *J Bells LLC v. Sentinel Ins. Co. Ltd.*, No. C20-5820BJR, 2020 WL 5905199, at *2 (W.D. Wash. Oct. 6, 2020) (citing *Chavez*, 888 F.3d at 414-15).

2. Whether the Amount in Controversy is Satisfied

In his complaint, Mr. Segar seeks: (1) "damages under his UIM coverage"; (2) treble damages under the CPA and IFCA; (3) extra-contractual general and special tort damages; (4) attorneys' fees and costs under the CPA and IFCA; (5) punitive damages; and (6) declaratory and injunctive relief. (*See* Compl. ¶¶ 3.2, 4.1, 6.2, 7.3, 8.4, 8.6, 10.1,

1  11.1, 12.1-12.3, 13.1-13.6, 14.2-14.8.)  Because Mr. Segar did not allege an exact dollar

2  amount of damages, however, it is not facially apparent from the complaint that the

3  jurisdictional amount in controversy is met.  Therefore, Allstate must prove the amount in

4  controversy exceeds $75,000 by a preponderance of the evidence.  *See Singer*, 116 F.3d

5  at 376.  After a review of the record, the court concludes that Allstate has met its burden.

6        In his motion to remand, Mr. Segar argues that Allstate has failed to carry its

7  burden, in part, because his complaint does not plead the specific amount of UIM benefits

8  that he seeks.  (*See* Remand Mot. at 4-5 (acknowledging that the UIM policy limit is

9  $100,000, but declining to state how much of that limit he seeks to recover).)  In

10  opposition to Mr. Segar's motion to remand, Allstate provides a copy of the demand

11  letter Mr. Segar sent to Allstate in August 2017, in which he claimed that his damages to

12  date totaled $68,129.86 and demanded that Allstate pay him the full $100,000 UIM

13  policy limit, as evidence that the amount in controversy more likely than not exceeds

14  $75,000.  (*See* Remand Resp. at 4-5; 1/3/22 Mead Decl. (Dkt. # 14) ¶ 3, Ex. A ("Segar

15  Demand Letter").)

16        The court treats Mr. Segar's pre-litigation demand as relevant evidence of the

17  damages that he seeks—namely, the full $100,000 UIM policy limit.[5]  *See, e.g.*, *Cohn v.*

18  *Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding that a demand "is relevant

19

20  _____

21  [5] As discussed below, even if the court were to treat the demand letter as evidence that
Mr. Segar instead seeks to recover only $68,129.86 under his UIM policy, his damages as of
August 2017, Allstate would still able to establish that the amount in controversy more likely

22  than not exceeds $75,000 based on Mr. Segar's requests for treble damages under the CPA and
IFCA.  (*See* Remand Resp. at 5-8); *see also infra* Section III.A.2.

evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *Egal v. Geico Gen. Ins. Co.*, No. C14-1964RSM, 2015 WL 1632950, at *3-4 (W.D. Wash. Apr. 13, 2015) (considering plaintiff's demand letter when determining that the amount in controversy was satisfied); *Flores v. Safeway, Inc.*, No. C19-0825JCC, 2019 WL 4849488, at *3 (W.D. Wash. Oct. 1, 2019) ("To establish the amount in controversy, a defendant may point to many different types of evidence. . . . A particularly powerful form of evidence is the plaintiff's own statements about the damages they seek.").  Mr. Segar's demand appears to reflect a reasonable estimate of his claims given that he commenced his lawsuit to recover UIM policy benefits that Allstate refused to pay him, as evidenced by the allegations in his complaint.[6]  (*See* Compl. ¶¶ 3.2, 3.8, 4.1, 13.1, 13.3.)  While Mr. Segar tries to create the impression that the amount in controversy is not met, the court agrees with Allstate's contention that when the allegations in his complaint are combined with his pre-litigation demand—which claimed that he was owed $100,000 in UIM benefits—the amount in controversy more likely than not exceeds $75,000.[7]  (*See* Remand Resp. at 4-5.)

//

---

[6] For example, in his complaint Mr. Segar states that:  "[t]his action arises from Defendant ALLSTATE's refusal to make a reasonable offer to settle the Plaintiff's claim for damages under his UIM policy" (Compl. ¶ 3.2); he is "entitled to an award of damages under his UIM coverage for all economic and non-economic losses as provided by law" (*id.* ¶ 4.1); "he is entitled to fair and reasonable compensation under his UIM coverage with Defendant ALLSTATE" (*id.* ¶ 13.1); and "[b]y virtue of Defendant's breach of the insurance contract, Defendant ALLSTATE is liable for the full amount of Plaintiff's claims" (*id.* ¶ 13.3).

[7] Mr. Segar's failure to challenge this contention in reply (*see generally* Dkt.), which the court construes as an admission that the argument has merit, *see* Local Rules W.D. Wash. LCR 7(b)(2), further bolsters the court's conclusion.

1    The court also agrees with Allstate's contention that Mr. Segar's requests for

2 treble damages under the IFCA and CPA further increase the amount in controversy

3 beyond $75,000.  (*See id.* at 5-8; Compl. ¶¶ 8.6, 13.6, 14.4-14.5).)  Under the CPA treble

4 damages may be awarded up to $25,000 per violation, *see* RCW 19.86.090, and under the

5 IFCA treble damages may be awarded in "an amount not to exceed three times the actual

6 damages," *see* RCW 48.30.015(2).  Because Mr. Segar explicitly requests treble damages

7 under the IFCA and CPA, the court applies his requests for treble damages to the

8 estimated $100,000 in damages under the UIM policy, *see supra*, and concludes that at

9 least $325,000—$100,000 trebled plus $25,000 for a CPA violation—is at controversy in

10 this matter.  *See, e.g.*, *Egal*, 2015 WL 1632950, at *4 (applying the plaintiff's request for

11 treble damages to the plaintiff's requested relief in their demand letter of policy limits of

12 $50,000 and holding that the amount in controversy exceeded $150,000).

13    Mr. Segar nevertheless argues that the prospect of receiving punitive damages[8] is

14 too speculative to satisfy Allstate's burden of establishing jurisdiction.  (*See* Remand

15 Mot. at 6-7.)  The court disagrees.  Where plaintiffs explicitly request treble damages

16 under the IFCA and CPA in the complaint, as Mr. Segar has here, courts apply the treble

17 damages request to calculate the amount in controversy.  *See, e.g.*, *Chabner v. United*

18 *Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 (9th Cir. 2000) (permitting calculation of

19 treble damages authorized by state statue when determining the amount in controversy);

20

21    _____

    [8] While Mr. Segar refers to treble damages as "punitive damages" (*see* Remand Mot. at

22 6-7), treble damages are not punitive damages; rather, they are statutory liquidated damages, *see* RCW 19.86.090; RCW 48.30.015(2).

1   *Wilson v. Geico Indem. Co.*, No. C18-0226RAJ, 2018 WL 3594474, at *2-3 (W.D. Wash.

2   July 26, 2018) (denying motion to remand where plaintiff's request for treble damages

3   under the CPA and IFCA increased amount in controversy above jurisdictional

4   threshold); *Lim v. Nat'l Gen. Ins. Co.*, No. C15-0383RSL, 2015 WL 12025326, at *2

5   (W.D. Wash. Apr. 30, 2015) (denying motion to remand after applying the plaintiff's

6   request for treble damages under the IFCA to the plaintiff's requested relief of her UIM

7   policy limits of $50,000.  Thus, Mr. Segar's explicit requests for awards of treble

8   damages under the CPA and IFCA is sufficient to place this enhanced amount of money

9   damages in controversy.

10        Accordingly, the court concludes that Allstate has sufficiently established that the

11   amount in controversy exceeds $75,000 based on Mr. Segar's allegations, his

12   pre-litigation demand for the full $100,000 UIM policy limit, and his requests for treble

13   damages under the CPA and IFCA.[9]  Because the parties are citizens of different states

14   and the amount in controversy more likely than not exceeds $75,000, the court has

15   subject matter jurisdiction over this matter and DENIES Mr. Segar's motion to remand.

16   **B.**     **Allstate's Partial Motion to Dismiss**

17        Allstate moves to dismiss Mr. Segar's bad faith, breach of fiduciary duty,

18   negligence, IFCA, CPA, estoppel, and declaratory judgment/injunctive relief claims

19

20

21

22

---

[9] Allstate also argues that Mr. Segar's requests for extra-contractual special and general tort damages, attorneys' fees under the CPA and IFCA, and declaratory/injunctive relief further increase the amount in controversy.  (*See* Remand Resp. at 8-10.)  However, even without considering these other requests, the jurisdictional threshold amount is reached, so the court need not reach these arguments.

under Federal Rule of Civil Procedure 12(b)(6).  (*See* MTD at 2.[10])  The court begins by

addressing the legal standard for motions to dismiss pursuant to Rule 12(b)(6) before

turning to its analysis of Mr. Segar's claims.

1.   <u>Legal Standard for Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998)

(stating that the court must accept all well-pleaded facts as true).  A claim is facially

plausible "when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

While "detailed factual allegations" are not required, a complaint must include "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  The court is

not required "to accept as true allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266

F.3d 979, 988 (9th Cir. 2001).  When considering a motion to dismiss under Rule

12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

---

[10] Allstate does not seek dismissal of Mr. Segar's breach of contract claim at this time. (*See* MTD at 2.)

1   party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

2   2005).

3          Under Rule 12(b)(6), dismissal can be based on "the lack of a cognizable legal

4   theory or the absence of sufficient facts alleged under a cognizable legal theory."

5   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Further, dismissal

6   is proper on grounds that a claim is barred by the applicable statute of limitations where

7   the running of the limitations period is apparent on the face of the complaint.  *See Jones*

8   *v. Block*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by

9   the applicable statute of limitations, the complaint is subject to dismissal for failure to

10  state a claim."); *Estate of Blue v. Cnty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997) (stating

11  that a statute of limitation question may be decided on a motion to dismiss where all facts

12  necessary to decide the issue are in record).

13         Although the scope of review on a motion to dismiss for failure to state a claim is

14  generally limited to the complaint, a court may consider evidence on which the complaint

15  "necessarily relies" if:  (1) the complaint refers to the document; (2) the document is

16  central to the plaintiff's claim; and (3) no party questions the authenticity of the

17  document.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting

18  *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006)); *Knievel v. ESPN*, 393 F.3d 1068,

19  1076 (9th Cir. 2005).  Rachelle Mead, the Allstate claim adjuster assigned to Mr. Segar's

20  UIM claim, filed a declaration in support of Allstate's motion to dismiss, which includes

21  as exhibits:  (1) her October 9, 2017 email to Mr. Segar's counsel following up on their

22  telephone call and confirming her evaluation of Mr. Segar's UIM claim; and (2)

1   Allstate's October 31, 2017 letter to Mr. Segar's counsel denying his UIM claim.  (*See*

2   11/23/21 Mead Decl. (Dkt. # 7) ¶¶ 3-5, Exs. A ("10/9/17 Email") & B ("10/31/17

3   Letter").)  The court may properly consider these exhibits in ruling on Allstate's motion

4   to dismiss because they are referenced in Mr. Segar's complaint and form the basis of

5   Mr. Segar's claims, which arise from allegations that Allstate mishandled his claim and

6   improperly denied him UIM benefits under the Policy.  (*See* Compl. ¶¶ 3.2, 3.8-3.11,

7   12.1 (alleging Allstate wrongfully denied and mishandled Mr. Segar's UIM claim and

8   wrongfully attempted to offset UIM coverage with Personal Injury Protection ("PIP")

9   payments)); *see also Maurice v. Allstate Ins. Co.*, No. C19-1837JCC-DWC, 2019 WL

10  7758878, at *1 n.1 (W.D. Wash. Dec. 19, 2019) (considering insurer's letter denying

11  plaintiff's UIM claim on a Rule 12(b)(6) motion to dismiss), *report and recommendation*

12  *adopted*, 2020 WL 433832 (W.D. Wash. Jan. 28, 2020).

13          2.  <u>Whether Mr. Segar's Claims are Subject to Dismissal</u>

14          Allstate argues that Mr. Segar's bad faith, breach of fiduciary duty, negligence

15  (collectively, his "extra-contractual claims"), IFCA, and CPA claims should be dismissed

16  with prejudice because each claim is barred by the applicable statutes of limitation.[11]

17  (*See* MTD at 2.)  Allstate also seeks dismissal of his estoppel and "declaratory

18  //

19

20  _____

21  [11] In its motion, Allstate makes additional arguments as to why Mr. Segar's
    extra-contractual claims and his IFCA claim otherwise fail to state a plausible claim for relief.
    (*See* MTD at 4-8.)  Because the court's holding with respect to the timeliness of these claims is
22  dispositive, *see infra* Sections III.B.2.a-b, the court does not discuss Allstate's additional
    arguments.

1   judgment/injunctive relief" claims because, it asserts, they "are not cognizable here."

2   (*See id.*)  The court will now address each claim in turn.

3            a.   *Extra-Contractual Claims*

4            Under Washington law, claims for bad faith under an insurance contract sound in

5   tort and are subject to a three-year statute of limitations.  *Trumbull v. Am. Sec. Ins. Co.*,

6   No. C17-0125RAJ, 2018 WL 3769797, at *2 (W.D. Wash. Aug. 9, 2018) (first citing

7   RCW 4.16.080(2); and then citing *Moratti v. Farmers Ins. Co. of Wash.*, 254 P.3d 939,

8   942 (Wash. Ct. App. 2011)).  Breach of fiduciary duty and negligence claims are likewise

9   subject to a three-year statute of limitations.  RCW 4.16.080(2); *see also Kazman v. Land*

10  *Title Co.*, No. C11-1210RSM, 2014 WL 128061, at *6 (W.D. Wash. Jan. 13, 2014);

11  *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 15 F. Supp. 3d 1116, 1128 n.5

12  (W.D. Wash. 2014).  The limitations period begins to run when the cause of action

13  accrues, which is when "the party has the right to apply to a court for relief."  *1000 Va.*

14  *Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 428 (Wash. 2006).  Typically, "an action

15  accrues immediately when the wrongful act occurs . . . ."  *Id.* (noting that under

16  Washington's discovery rule of accrual, the action accrues when the plaintiff knew or

17  should have known "of the salient facts underlying the elements of the cause of action"

18  (citing *Green v. A.P.C.*, 960 P.2d 912 (Wash. 1998)).  An insured's bad faith claim

19  against his insurer accrues at the time his claim for benefits is "initially denied."  *Lenk v.*

20  *Life Ins. Co. of N. Am.*, No. CV-10-5018-LRS, 2010 WL 5173207, at *2 (E.D. Wash.

21  Dec. 13, 2010) (concluding that the statute of limitations began to run on the plaintiff's

22  breach of fiduciary duty and negligence (bad faith) claims when his disability benefits

1    claim was initially denied by the defendant); *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d

2    1299, 1306-07 (W.D. Wash. 2013) (stating that a tort claim arising from the insurer's

3    handling of a PIP claim accrues when the insurer denied coverage); *Stedman v.*

4    *Progressive Direct Ins. Co.*, No. C18-1254RSL, 2019 WL 1013456, at *2 (W.D. Wash.

5    Mar. 4, 2019) (concluding that the statute of limitations on the plaintiff's

6    extra-contractual claims accrued when the plaintiff became aware of the conduct giving

7    rise to her claims, which was the day she received notice that her PIP benefits had been

8    terminated).

9        While Mr. Segar's extra-contractual claims arise from Allstate's allegedly

10   improper denial of his request for UIM benefits under the Policy and refusal to make a

11   reasonable offer to settle his UIM claim (*see* Compl. ¶¶ 3.2, 3.8-3.12, 6.1-6.2, 7.1-7.3,

12   10.1), the complaint is devoid of any dates related to Allstate's denial of his claim (*see*

13   *generally id.*).  As noted above, however, in deciding Allstate's motion the court may

14   properly consider the two exhibits that Allstate submitted regarding the timing of its

15   denial of Mr. Segar's UIM claim.  *See supra* Section III.B.1 (first citing 10/9/17 Email;

16   and then citing 10/31/17 Letter).  Allstate argues that its October 9, 2017 email, which

17   informed Mr. Segar that he had been fully compensated for his accident-related damages

18   and it would not be paying him any UIM benefits under the Policy, serves as its first

19   denial of Mr. Segar's UIM claim.  (*See* MTD at 2-5 (citing 10/9/17 Email) (stating that

20   the October 31 letter was a reiteration of its position and denial of Mr. Segar's UIM

21   claim).)  Because Mr. Segar did not challenge Allstate's argument regarding the date that

22   his claim was first denied, the court deems Mr. Segar's failure to respond as an admission

1   that the argument has merit and will treat October 9, 2017, as the date when Allstate first

2   allegedly improperly denied Mr. Segar's UIM claim.  (*See* Dkt. (indicating that Mr. Segar

3   did not respond to Allstate's motion)); Local Rules W.D. Wash. LCR 7(b)(2); *see also*

4   *Perrie*, 2012 WL 760911, at *1 (construing the plaintiff's failure to respond to the motion

5   as an admission that the motion has merit); *Nieuwejaar v. Nationstar Mortg., LLC*, No.

6   C15-1663JLR, 2016 WL 1436123, at *4 (W.D. Wash. Apr. 12, 2016) ("The court

7   construes Plaintiffs' silence regarding this argument as an admission of its merit, and

8   declines to consider the issue further."), *aff'd*, 700 F. App'x 723 (9th Cir. 2017).

9          Thus, the three-year statutes of limitation for Mr. Segar's bad faith, breach of

10  fiduciary duty, and negligence claims began to run on October 9, 2017, which is when

11  Mr. Segar knew or should have known that Allstate would not be paying him any UIM

12  benefits under the Policy.  (*See* 10/9/17 Email); *Lenk*, 2010 WL 5173207, at *2; *see also*

13  *Maurice*, 2019 WL 7758878, at *2 (stating that the plaintiff knew or should have known

14  of the denial of her UIM claim, which formed the basis of the action, when Allstate sent a

15  letter notifying the plaintiff that her claim was valued at zero).  Mr. Segar, however, did

16  not file this lawsuit until October 14, 2021—over four years after Allstate initially denied

17  his demand for UIM benefits under the Policy.  (*See generally* Compl.)  Accordingly, Mr.

18  Segar's bad faith, breach of fiduciary duty, and negligence claims are time-barred and the

19  court GRANTS Allstate's partial motion to dismiss with respect to these claims.

20          *b.  IFCA Claim*

21          IFCA claims are subject to a three-year statute of limitations, which begins to run

22  when the insurer first extends "its allegedly unreasonable settlement offer or

unreasonably denies coverage." *Trumbull*, 2018 WL 3769797, at *2 (citing *Ward v. Stonebridge Life Ins. Co.*, No. C13-5092RBL, 2013 WL 3155347, at *5 (W.D. Wash. June 21, 2013)); *Walker v. Metro. Prop. & Cas. Ins. Co.*, No. C12-0173JLR, 2013 WL 942554, at *5 (W.D. Wash. Mar. 8, 2013) (concluding that plaintiffs' IFCA claim accrued on the date their insurer rejected their contents inventory list, which included requested values for personal property damaged in a house fire).

As stated above, Allstate first allegedly unreasonably denied coverage of Mr. Segar's UIM claim related to the 2015 automobile accident on October 9, 2017. *See supra* Section III.B.2.a.  Mr. Segar filed his complaint in state court on October 14, 2021 (*see generally* Compl.)—more than three years after Allstate first extended "its allegedly unreasonable settlement offer or unreasonably denie[d] coverage."[12]  *See Trumbull*, 2018 WL 3769797, at *2.  Accordingly, Mr. Segar's IFCA claim is time-barred and the court GRANTS Allstate's partial motion to dismiss with respect to this claim.

### c.  CPA Claim

A CPA claim is "forever barred unless commenced within four years after the cause of action accrues."  RCW 19.86.120; *see also Dees*, 933 F. Supp. 2d at 1309.  A CPA "cause of action accrues and the statute of limitations begins to run when a party has

---

[12] Because Mr. Segar provided notice to Allstate and the insurance commissioner twenty days before bringing a claim under the IFCA, as required by RCW 48.30.015(8)(a), the statute of limitations for his IFCA claim was tolled during that twenty-day period of time.  (*See* Compl. ¶ 3.14); RCW 48.30.015(8)(d); *see also Mayuga Living Tr. v. Sentinel Ins. Co., Ltd.*, No. C19-5047TOR, 2019 WL 5258050, at *2 (E.D. Wash. Aug. 29, 2019).  However, even giving Mr. Segar the benefit of that 20-day tolling period, his IFCA claim is still time-barred because it was filed more than three years and 20 days after the statute of limitations began to run.  (*See* Compl.; 10/9/17 Email); *Trumbull*, 2018 WL 3769797, at *2.

1    the right to apply to a court for relief." *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct.

2    App. 2014) (quoting *O'Neil v. Estate of Murtha*, 947 P.2d 1252, 1254 (Wash. Ct. App.

3    1997)).

4           As with his other extra-contractual claims, Mr. Segar's CPA claim arises out of

5    Allstate's allegedly unreasonable handling and denial of his claim for coverage and

6    payment of UIM benefits under the Policy.  (*See* Compl. ¶¶ 3.2, 3.8-3.12, 8.1-8.3.)  Once

7    Allstate first notified Mr. Segar that it would not be paying him any UIM benefits under

8    the Policy on October 9, 2017, *see supra* Section III.B.2.a, the statute of limitations for

9    his CPA claim began to run.  The four-year statute of limitations expired on October 9,

10   2021—five days before Mr. Segar filed this lawsuit (*see generally* Compl.).  Thus, Mr.

11   Segar's CPA claim is time-barred and the court GRANTS Allstate's partial motion to

12   dismiss with respect to this claim.

13            *d.  Estoppel Claim*

14          In his complaint, Mr. Segar dedicates one of his causes of action to a claim

15   alleging that Allstate should be estopped from denying or limiting coverage under the

16   Policy.  (*See* Compl. ¶ 11.1 (noting that this claim, like his others, arises out of Allstate's

17   allegedly wrongful denial and mishandling of his UIM claim).)  Coverage by estoppel,

18   however, is not a separate cause of action; instead, it is "a remedy available to plaintiffs

19   in insurer bad faith actions in certain contexts." *Crowthers v. Travelers Indem. Co.*, No.

20   C16-0606RSL, 2016 WL 5944583, at *4 (W.D. Wash. Oct. 13, 2016); *see also*

21   *Graham-Bingham Irrevocable Tr. v. John Hancock Life Ins. Co. USA*, 827 F. Supp. 2d

22   1275, 1288 (W.D. Wash. 2011) (noting that coverage by estoppel is a possible remedy in

1  the context of third-party bad faith claims, but that "Washington law is clear that

2  coverage by estoppel may not be imposed [in the first-party context]"  (first citing *Kirk v.*

3  *Mt. Airy Ins. Co.*, 951 P.2d 1124, 1127-28 (Wash. 1998); then citing *Safeco Ins. Co. v.*

4  *Butler*, 823 P.2d 499, 504-06 (Wash. 1992); and then citing *Coventry Assocs. v. Am.*

5  *States Ins. Co.*, 961 P.2d 933, 939-40 (Wash. 1998))).

6       As explained above, Mr. Segar's bad faith claim fails as a matter of law because it

7  is time-barred.  *See supra* Section III.B.2.a.  However, even if his bad faith claim were

8  successful, he would not be entitled to coverage by estoppel because this remedy is not

9  available to first-party claimants who assert a right to payment as a covered person under

10 an insurance policy.  *See Dees*, 933 F. Supp. 2d at 1309; RCW 48.30.015(4); *see also*

11 *Crowthers*, 2016 WL 5944583, at *4.  Mr. Segar's estoppel claim therefore fails to state a

12 cognizable claim for relief because coverage by estoppel is not an independent cause of

13 action and the relief he seeks is unavailable in this context.  Accordingly, the court

14 GRANTS Allstate's partial motion to dismiss with respect to this claim.

15          *e.  Declaratory/Injunctive Relief Claim*

16       Mr. Segar's complaint also contains a cause of action for "declaratory/injunctive

17 relief," which seeks an order declaring that Allstate may not offset his UIM coverage

18 with PIP payments; that he has not been fully compensated for his alleged injuries; and

19 that he is entitled to UIM benefits.  (*See* Compl. ¶¶ 12.1-12.3.)  "Requests for declaratory

20 judgment orders that merely impose the remedies provided for in other claims are

21 duplicative and may be dismissed on that basis"; declaratory relief is not cognizable as an

22 independent cause of action in such circumstances.  *See Fosmire v. Progressive Max Ins.*

*Co.*, No. C10-5291JLR, 2010 WL 3489595, at *5 (W.D. Wash. Aug. 31, 2010) (dismissing insured's declaratory judgment claim as duplicative of his breach of contract and CPA claims); *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("To the extent [plaintiff] seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed."). Further, the court may dismiss a plaintiff's stand-alone claim for injunctive relief because injunctive relief is merely a remedy for an underlying cause of action, not a cognizable separate cause of action.  *Kwai Ling Chan v. Chase Home Loans Inc.*, No. C12-0273JLR, 2012 WL 1252649, at *3 (W.D. Wash. Apr. 13, 2012) ("It is well settled that a claim for 'injunctive relief' standing alone is not a cause of action.").

Mr. Segar's declaratory judgment/injunctive relief claim is improperly pleaded as an independent cause of action and, with respect to his request for a declaratory judgment, merely duplicates his breach of contract or CPA claims because it requests the same kind of relief that may be sought in connection with those claims.  *See Fosmire*, 2010 WL 3489595, at *5; *Chan*, 2012 WL 1252649, at *3-4.  Because Mr. Segar's declaratory/injunctive relief claim fails to state a plausible claim for relief, the court GRANTS Allstate's partial motion to dismiss with respect to this claim.[13]

//

---

[13] If Mr. Segar eventually prevails on an independent claim, "the court will necessarily render a judgment setting forth as such and providing appropriate remedies." *See Chan*, 2012 WL 1252649, at *4.  Similarly, if injunctive relief is proper, "it will be because [he] prevails, or has met the necessary test for such relief under Federal Rule of Civil Procedure 65 on an independent cause of action." *Id.*

1          3.   Leave to Amend

2          As a general rule, when a court grants a motion to dismiss, the court should

3    dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

4    316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  In determining

5    whether dismissal without leave to amend is appropriate, courts consider such factors as

6    undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

7    cure deficiencies by amendments previously allowed, undue prejudice to the opposing

8    party by virtue of allowance of the amendment, and futility of amendment.  *Foman v.*

9    *Davis*, 371 U.S. 178, 182 (1962); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522,

10   532 (9th Cir. 2008).

11         In this case, the court denies leave to amend because it would be futile.  *See, e.g.*,

12   *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (finding

13   amendment futile where claims were barred by the applicable statute of limitations);

14   *Chan*, 2012 WL 1252649, at *4 (dismissing, without leave to amend, insured's

15   declaratory relief, injunctive relief, and recission claims because they were not

16   cognizable independent causes of action).  Federal courts consider the failure to respond

17   to a motion to dismiss a claim to constitute a waiver of the claim at issue.  *See Galaviz v.*

18   *Fed. Bureau of Investigation*, No. C19-1611JLR, 2020 WL 208044, at *4 (W.D. Wash.

19   Jan. 14, 2020) (denying leave to amend in light of the plaintiff's abandonment of his

20   claims through his failure to respond to the defendant's motion to dismiss); *Prieto v. Fed.*

21   *Home Loan Mortg. Corp.*, No. EDCV 14-01385-CJC, 2014 WL 4257860, at *2 (C.D.

22   Cal. Aug. 28, 2014) ("As [the plaintiffs] have failed to respond to [the defendants']

motion to dismiss, and have not provided any indication in their Complaint that its deficiencies can be remedied, the Court finds that granting leave to amend the Complaint would be futile."). Because Mr. Segar has abandoned his claims by failing to respond to Allstate's motion to dismiss and has not provided any indication that the deficiencies in his complaint discussed above can be remedied, the court DENIES leave to amend.

## IV.   CONCLUSION

For the reasons stated above, the court DENIES Mr. Segar's motion to remand (Dkt. # 10). Further, the court GRANTS Allstate's partial motion to dismiss (Dkt. # 6) and DISMISSES Mr. Segar's breach of the duty of good faith, breach of fiduciary duty, negligence, IFCA, CPA, estoppel, and declaratory/injunctive relief claims WITH PREJUDICE and WITHOUT LEAVE TO AMEND.

Dated this 11th day of January, 2022.

JAMES L. ROBART
United States District Judge